IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TONY ROY, on behalf of himself and others Similarly situated, | § § § | |
| *Plaintiff,* | § § | |
| v. | § § | CASE NO. 3:25-cv-03278-S |
| HAYES FAMILY ENTERPRISES LLC d/b/a GECKO GREEN LAWN CARE, | § § § § | |
| *Defendant*. | § | |

**BRIEF IN SUPPORT OF
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

COMES NOW, Defendant Hayes Family Enterprises, LLC (dba Gecko Green Lawn Care) ("Defendant" or "Gecko Green"), and respectfully files this Brief in Support of Defendant's Motion for Summary Judgment. A supporting Appendix of Exhibits is also being filed contemporaneously with this Brief. *See* Dkt. 28.

**I. SUMMARY OF MOTION**

1.  Defendant should be granted summary judgment on all of Plaintiff Tony Roy's ("Plaintiff's") claims. Plaintiff—a former customer of Gecko Green—cannot show Defendant engaged in any "telephone solicitations" prohibited by the Telephone Consumer Protection Act ("TCPA"). This is so because until July 7, 2025, when Plaintiff asked to be placed on Gecko Green's Internal Do-Not-Call List, Plaintiff had an "established business relationship" with Gecko Green arising from his website inquiry about Defendant's services, and subsequent contract with Gecko Green to supply those services. Because Defendant has not called Plaintiff since July 7, 2025, Plaintiff has no claim for damages or injunctive relief under the TCPA as a matter of law.

1

## II.  UNDISPUTED FACTS

2. Gecko Green is a local, family-owned, lawn-care and pest-control services company.  Exhibit 1 (Hayes Dec., ¶ 3).  Gecko Green does not make marketing calls to any residential phone subscriber that has not first expressed interest in obtaining information about Gecko Green's services (e.g., via an inquiry through Gecko Green's website, or in response to direct mail, door-to-door, or radio solicitations).  Id. (Hayes Dec., ¶ 4).

3. On August 11, 2023, Plaintiff made an inquiry regarding Gecko Green's lawn care services by filling out an interest form on Gecko Green's website.  Id. (Hayes Dec., ¶ 5).

4. On November 9, 2023, Plaintiff signed up for Gecko Green's services.  Id. (Hayes Dec., ¶ 8).

5. From November 9, 2023 until April 24, 2024, Plaintiff remained a Gecko Green customer.  Id. (Hayes Dec., ¶ 9); Dkt. 1 (Complaint, ¶ 24).

6. Although Plaintiff alleges he made a verbal request to be placed on Gecko Green's Internal Do Not Call List in November of 2024, Gecko Green has no record of any call to or from Plaintiff during that month.  Dkt. 1 (Complaint, ¶ 26); Exhibit 1 (Hayes Dec., ¶ 10).

7. Plaintiff alleges Gecko Green made calls in violation of the TCPA on January 8, June 11, and July 7, 2025.  Dkt. 1 (Complaint, ¶ 29).

8. However, it was not until July 7, 2025 that Plaintiff requested Gecko Green put him on its Internal DNC List. Exhibit 1 (Hayes Dec., ¶¶ 14-17).

9. On July 15, 2025, Gecko Green put Plaintiff on its Internal DNC List.  Id. (Hayes Dec., ¶ 17).

10. Gecko Green has not called Plaintiff since July 7, 2025, and has no intention of calling him in the future absent Plaintiff contacting Gecko Green and again expressing interest in using its services.  Id. (Hayes Dec., ¶¶ 18-19).

### III.  ARGUMENT & AUTHORITES

11.    All Plaintiff's claims should be dismissed as a matter of law.

**A.**    <u>**Standard of Review**</u>**:**

12.    As this Court has stated:

> Courts shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. In making this determination, courts must view all evidence and draw all reasonable inferences in the light most favorable to the party opposing the motion. The moving party bears the initial burden of informing the court of the basis for its belief that there is no genuine issue for trial.
>
> When a party bears the burden of proof on an issue, she must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in her favor. When the nonmovant bears the burden of proof, the movant may demonstrate entitlement to summary judgment either by (1) submitting evidence that negates the existence of an essential element of the nonmovant's claim or affirmative defense, or (2) arguing that there is no evidence to support an essential element of the nonmovant's claim or affirmative defense. Once the movant has made this showing, the burden shifts to the nonmovant to establish that there is a genuine issue of material fact so that a reasonable jury might return a verdict in its favor. Moreover, conclusory allegations, speculation, and unsubstantiated assertions will not suffice to satisfy the nonmovant's burden. Factual controversies are resolved in favor of the nonmoving party only when an actual controversy exists, that is, when both parties have submitted evidence of contradictory facts.

*Briones v. Braum's, Inc.*, No. 3:17-CV-1301-S, 2018 U.S. Dist. LEXIS 80121, at *3-4 (N.D. Tex. 2018) (internal citations and quotations omitted).

**B.**    <u>**Plaintiff has No Claim National Do Not Call List Claim Under 47 C.F.R. § 64.1200(c):**</u>

13.    Section 64.1200(c) requires Plaintiff to show that Gecko Green made "telephone solicitations" to him.  *See* 47 C.F.R. § 64.1200(c) (first sentence).[1]  Section 64.1200(f) defines

---

[1] Specifically, under Section 64.1200(c), Plaintiff must show Gecko Green made two "telephone solicitations" to him during a 12-month period, thirty days after he placed his phone number on the NDNC List.  47 U.S.C. § 227(c)(5) (requiring two offending calls in a 12-month period); 47 C.F.R. 64.1200 (c)(2)(i)(D) (31 day NCNC list update requirement).  Defendant does not dispute Plaintiff's allegation that his phone number has been on the NDNC List since November 2021, but contends Plaintiff cannot prove Gecko Green made two "telephone solicitations" to him within any 12-month period after December 2021.

"telephone solicitation" to *exclude* a call to "any person with whom the caller has an established business relationship. . . ." *Id.* § 64.1200(f)(15)(ii). *See also* 47 U.S.C. 227(a)(4)(B). It is undisputed Plaintiff was a Gecko Green customer. *See* Dkt. 1 (Complaint, ¶ 24); Exhibit 1 (Hayes Dec., ¶ 9). The existence of an "established business relationship" between Plaintiff and Gecko Green until July 7, 2025 precludes his Section 62.1200(c) National DNC claim as a matter of law.

14.  The TCPA regulations define "established business relationship" in relevant part to mean:

> [A] prior or existing relationship formed by a voluntary two-way communication between a person or entity and a residential subscriber *with or without an exchange of consideration*, on the basis of the subscriber's purchase or transaction with the entity within the eighteen (18) months immediately preceding the date of the telephone call or on the basis of the subscriber's inquiry or application regarding products or services offered by the entity within the three months immediately preceding the date of the call, which relationship has not been previously terminated by either party.
>
> (i) The subscriber's seller-specific do-not-call request, as set forth in paragraph (d)(3) of this section, terminates an established business relationship for purposes of telemarketing and telephone solicitation even if the subscriber continues to do business with the seller. . . .

47 C.F.R. § 64.1200(f)(5) (emphasis added).

15.  Here, Plaintiff had an "established business relationship" with Gecko Green during the entire time Gecko Green allegedly placed calls to him. And, as pointed out in the next section of this Brief, Plaintiff cannot show any calls were made to him by Gecko Green after he made a "seller-specific do-not-call request" to Gecko Green.

16.  Specifically with respect to Plaintiff's National DNC List claim, the undisputed facts show Plaintiff's established business relationship with Gecko Green began on August 11, 2023, when Plaintiff made an inquiry regarding Gecko Green's services via the Gecko Green website. *See* Exhibit 1 (Hayes Dec., ¶ 5). Although that "inquiry-based" established business

4

relationship would have expired on November 11, 2023,[2] on November 9, 2023, Plaintiff contracted with Gecko Green for lawn care services. *Id.* (Hayes Dec., ¶ 8).

17. Absent proof that Plaintiff made an earlier "seller-specific do-not-call request," that "purchase-based" established business relationship did not expire until October 24, 2025—18 months after Plaintiff terminated his services contract with Gecko Green.[3] *Id.* (Hayes Dec., ¶ 9).

18. Here, the last call Gecko Green made to Plaintiff was on July 7, 2025, during which Plaintiff made a request to be put on Gecko Green's Internal DNC List. Exhibit 1, (Hayes Dec., ¶¶ 14-17); Dkt. 1 (Complaint, ¶ 29(c)). Gecko Green made no calls to Plaintiff after July 7, 2025, and put Plaintiff on its Internal Do Not Call List on July 15, 2025—within ten business days after the date of Plaintiff's request. Exhibit 1, (Hayes Dec., ¶¶ 16-18); 47 C.F.R. § 64.1200(d)(3).

19. Based on the undisputed facts, Plaintiff cannot prove Gecko Green made a "telephone solicitation" in violation of Section 64.1200(c), absent evidence that Plaintiff made a "seller-specific do-not-call request" prior to June 20, 2025.[4] Because Plaintiff cannot make such a showing, Defendant should be granted summary judgment on Plaintiff's claims under both Sections 64.1200(c) and (d) as a matter of law.

---

[2] *See* 64 CFR § 64.1200(f)(5) (definition of "established business relationship," including 3-month safe harbor period for calls to those who have inquired about Gecko Green's services).

[3] *See* 64 CFR § 64.1200(f)(5) (definition of "established business relationship," including 18-month safe harbor for Gecko Green former customers like Plaintiff). Plaintiff's termination of Gecko Green's services did not, alone, terminate his established business relationship with Gecko Green as a matter of law. *See, e.g.*, *Rowan v. US Dealer Servs.*, No. 21-09945 (KM)(LDW), 2022 U.S. Dist. LEXIS 127153, at *9 (D.N.J. July 18, 2022) ("The Court . . . holds that, absent the consumer providing the seller with a do-not-call request, or the functional equivalent of such a request, the termination of an underlying commercial relationship is not sufficient to terminate an EBR and cut off the otherwise-applicable eighteen-month deadline for calls.").

[4] *See* 47 C.F.R. § 64.1200(d)(3) (requiring requests to be placed on internal do not call lists to be honored within 10 business days of receipt). Defendant asks the Court to take judicial notice that in 2025, due to the Independence Day Holiday falling on a Friday, June 20, 2025 is ten business days before July 7, 2025, the date of Gecko Green's last call to Plaintiff. *See* Fed. R. Evid. 201; Exhibit 2.

**C.  Plaintiff Cannot Prove his Internal Do Not Call List Claim Under 47 C.F.R. § 64.1200(d):**

20. In order to prevail on his Section 64.1200(d) Internal DNC List claim, Plaintiff must show that he requested to be placed on Gecko Green's IDNC List before June 20, 2025.[5] Although Plaintiff alleges he made a request to be placed on Gecko Green's IDNC List in November 2024, Gecko Green has no record of any telephone communications with Plaintiff at all during that month.[6]  *See* Exhibit 1 (Hayes Dec., ¶ 10); Dkt. 1 (Complaint, ¶ 26).

21. Indeed, Plaintiff did not request to be put on Gecko Green's Internal DNC List until July 7, 2025. Exhibit 1 (Hayes Dec., ¶¶ 14-16).  Gecko Green made no calls to Plaintiff after that date, and formally put Plaintiff on its Internal DNC List on July 15, 2025.  *Id.* (Hayes Dec., ¶ 17).  As such, Plaintiff cannot prevail on his Internal DNC claim under Section 64.1200(d) claim.

**D.  Plaintiff has no Injunctive Relief Claims as a Matter of Law:**

22. Plaintiff also has no claim for injunctive relief.  Gecko Green has not called Plaintiff since his July 7, 2025 request to be put on the Gecko Green Internal DNC List, and Gecko Green has no intention of calling Plaintiff in the future, absent Plaintiff creating a new established business relationship with Gecko Green.  Exhibit 1 (Hayes Dec, ¶¶ 18-19).

23. Challenges to standing may be either "facial" or "factual."  *Superior MRI Servs., Inc. v. Alliance Healthcare Servs., Inc.*, 778 F.3d 502, 504 (5th Cir. 2015).  Here, Defendant asserts a factual challenge to Plaintiff's standing to seek injunctive relief.[7]  *Id.* (where "the defendant

---

[5] *See* note 4, *supra*.

[6] Gecko Green raised this issue with counsel for Plaintiff during the parties' February 12, 2026 Rule 26(f) conference, and set forth the absence of such evidence in the parties' joint Rule 26(f) Report.  *See* Dkt. 22 at 3, n.4.  Although counsel for Plaintiff indicated they would inquire with their client regarding evidence of an earlier request to be placed on Gecko Green's Internal DNC List, as of the date of this filing, no such evidence has been provided.

[7] Defendant previously filed a Motion to Dismiss making a facial attack on Plaintiff's injunctive relief claims.  *See* Dkts. 11, 12, 13 & 20.  At the February 25, 2026 Rule 16 scheduling conference, Defendant

submits affidavits, testimony, or other evidentiary materials" in support of the motion, the attack on standing is considered factual (internal quotation marks omitted)). "To defeat a factual attack, a plaintiff must prove the existence of subject-matter jurisdiction by a preponderance of the evidence and is obliged to submit facts through some evidentiary method to sustain his burden of proof." *Id*. (internal quotation marks omitted).

24. "Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy. The doctrine limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). To demonstrate Article III standing, "a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021).

25. Significantly, "a plaintiff must demonstrate standing separately for each form of relief sought." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000) (citations omitted). Indeed, "the Supreme Court made clear that plaintiffs may lack standing to seek prospective relief even though they have standing to sue for damages." *Soc'y of Separationists, Inc. v. Herman*, 959 F.2d 1283, 1285 (5th Cir. 1992) (en banc) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 101-03 (1983)).

26. "To obtain equitable relief for past wrongs, a plaintiff must demonstrate either continuing harm or a real and immediate threat of repeated injury in the future." *Id.* Specifically, to have standing when seeking injunctive relief, a plaintiff must allege facts: (1) "from which it

---

agreed to withdraw that motion without prejudice in favor of asserting a factual challenge to Plaintiff's standing in this motion. *See* Dkt. 25.

7

appears there is a substantial likelihood that he will suffer injury in the future"; (2) demonstrating "a substantial and continuing controversy between two adverse parties"; (3) "from which the continuation of the dispute may be reasonably inferred"; and (4) showing the controversy is "real and immediate, . . . creat[ing] a definite, rather than speculative threat of future injury". *Bauer v. Texas*, 341 F.3d 352, 358 (5th Cir. 2003) (citations omitted).

27. In this case, both the face of the Complaint and undisputed evidence demonstrate that Plaintiff lacks Article III standing to seek injunctive relief. Plaintiff pleads no facts, which if proven, would establish substantial likelihood that he will suffer injury in the future, that there is a substantial and continuing controversy between him and Defendant that would be addressed through injunctive relief, or from which an inference of such a dispute can reasonably be drawn. There are simply no allegations of any real and immediate threat of future injury to Plaintiff. And, the evidence shows no such facts could ever exist.

28. Numerous courts around the country have concluded complaints that contained threadbare injunctive relief allegations similar to those asserted by Plaintiff here were insufficient to survive a 12(b)(1) motion to dismiss. *See*, *e.g.*, *Koeller v. Cyflare Sec., Inc*., No. 4:25-cv-00410-MTS, 2025 U.S. Dist. LEXIS 231540, at *7 (E.D. Mo. Nov. 25, 2025) (allegations of two calls to plaintiff in three months plus a call to another alleged class member a year earlier were insufficient to provide Article III standing for injunctive relief); *Wilson v. PacifiCorp*, No. 6:24-cv-01956-AA, 2025 U.S. Dist. LEXIS 193363, at *7 (D. Or. Sept. 30, 2025) (inability to allege call received more recently than 10 months prior to complaint defeated plaintiff's standing to assert claims for injunctive relief); *Taylor v. Kin Ins., Inc*., No. 25-cv-00213, 2025 U.S. Dist. LEXIS 109673, at *5 (N.D. Ill. June 10, 2025) (plaintiff's allegation of receiving two calls within the span of a single month did not support the inference that she was at risk of repeated injury); *Johnson v. ACA Helpline, LLC*, No. 3:24cv663 DRL-SJF, 2025 U.S. Dist. LEXIS 14760, at *6 (N.D. Ind. Jan. 24,

8

2025) (two calls four months before suit were insufficient to plead a likelihood of substantial and immediate irreparable injury); *Martin v. Bottom Line Concepts LLC*, 723 F.Supp.3d 270, 281-82 (S.D.N.Y. 2024) (no standing for injunctive relief where complaint only detailed one call received a month before suit); *Brown v. Nano Hearing Tech Opco, LLC,* No. 3:24-cv-00221-BTM-JLB, 2024 U.S. Dist. LEXIS 120371, at *20 (S.D. Cal. July 9, 2024) (dismissing TCPA injunctive relief claim based on allegations plaintiff had received three calls from the defendant in one month prior to filing suit and none since did not show "a sufficient likelihood that [plaintiff would] again be wronged in a similar way."); *Schaevitz v. Braman Hyundai, Inc.*, 437 F. Supp. 3d 1237, 1251–52 (S.D. Fla. 2019) (dismissing request for injunctive relief in TCPA case for lack of standing where there was nothing suggesting possible future injuries). The addition of undisputed evidence that Plaintiff has not been called by Gecko Green since July 7, 2025, and that Gecko Green has no intention of calling him in the future, is the death knell of his injunctive relief claims.

29.  Plaintiff has not and cannot establish the requisite conduct to create Article III standing to seek injunctive relief. Plaintiff alleges that he received three telephone calls, the last of which was almost six months before this action was filed. Dkt. 1 (Complaint, ¶ 29). Plaintiff does not allege any facts to suggest he is subject to "either continuing harm, or a real and immediate threat of repeated injury in the future". *Herman*, 959 F.2d at 1285. Moreover, the evidence here conclusively demonstrates Gecko Green has made no calls to Plaintiff since July 7, 2025, when he requested to be put on Gecko Green's Internal DNC List, and has no plans to call him in the future. *See* Exhibit 1 (Hayes Dec., ¶¶ 18-19). Summary judgment on Plaintiff's injunctive relief allegations is appropriate.[8]

---

[8] In the event the Court does not grant summary judgment on all Plaintiff's claims, but does on his injunctive relief claims, Plaintiff's injunctive relief class allegations should be stricken. *See Johnson*, 2025 U.S. Dist. LEXIS 14760, at *7 (striking as impertinent plaintiff's 23(b)(2) class allegations because his "lack of standing to seek injunctive relief also means that [he] may not seek that relief on behalf of the

## IV. CONCLUSION

30. Plaintiff has no TCPA claim against Defendant as a matter of law. The undisputed facts show that Plaintiff created an "established business relationship" with Gecko Green by: (a) reaching out to Gecko Green to inquire about its services; and (b) contracting with Gecko Green for six months of lawn care services. That established business relationship did not end until July 7, 2025, when Plaintiff requested he be put on Gecko Green's Internal DNC List. Gecko Green promptly added Plaintiff to its Internal DNC List, and made no calls to him after July 7, 2025. As such, Gecko Green respectfully submits it is entitled to summary judgment on all Plaintiff's claims.

Respectfully submitted,

/s/ *David W. Dodge*
David W. Dodge, P.C.
State Bar No. 24002000
ddodge@gpmz-law.com
Charles C. Frederiksen
State Bar No. 07413300
cfrederiksen@gpmz-law.com
GLAST PHILLIPS MURRAY ZOPOLSKY, P.C.
14901 Quorum Drive, Suite 300
Dallas, TX 75254-6735
972-419-8300 – Telephone
972-418-8329 – Telecopier
ATTORNEYS FOR DEFENDANT
HAYES FAMILY ENTERPRISES LLC d/b/a GECKO GREEN LAWN CARE

### CERTIFICATE OF SERVICE

I certify that on March 11, 2026, I served a copy of the foregoing document on all counsel of record in accordance with Federal Rule of Civil Procedure 5 via the Court's ECF system.

/s/ *David W. Dodge*
David W. Dodge

---

putative class." (citation omitted)). *See also Wilson v. Centene Mgmt. Co., L.L.C.*, 144 F.4th 780, 787 (5th Cir. 2025) (citations omitted) ("In the class-action context, the class representative must have standing to represent a class of other allegedly injured persons. After all, if the class representative lacks standing, then there is no Article III suit to begin with — class certification or otherwise."); Fed. R. Civ. P. 23(d)(1)(D) (the court may "require that the pleadings be amended to eliminate allegations about representation of absent persons.").